**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**
**ROCHESTER DIVISION**

| | | |
|---|---|---|
| CAYUGA NATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| THE HONORABLE BARRY L. PORSCH, | ) | **COMPLAINT** |
| in his official capacity as Acting Justice of | ) | |
| the Supreme Court of the State of New | ) | |
| York, Seneca County, JULIUS KETTLE, | ) | |
| and DAREN KETTLE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Cayuga Nation (at times herein the "Nation"), by and through its counsel, upon personal knowledge of its own actions and public materials and upon information and belief as to all other matters, complains against Defendants, The Honorable Barry L. Porsch, in his official capacity as Acting Justice of the Supreme Court of the State of New York, Seneca County, Julius Kettle, and Daren Kettle, as follows:

## INTRODUCTION

1.      Federal law respects tribal sovereignty by rigidly enforcing the boundaries between federal, state, and tribal authority. This case involves the intrusion of the New York state judicial system on the sovereign authority of the Cayuga Nation, in violation of well-established principles of federal law. It implicates fundamental questions as to a tribal court's authority to resolve disputes between an Indian Nation and its members, arising under tribal law, and relating to land on the Nation's own reservation. And it asks this Court to repair damage inflicted by a New York state court against the "bedrock principle of federal Indian law that every tribe is capable of

managing its own affairs and governing itself." *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016) (internal quotation marks omitted).

2.     Federal courts, both in this district and elsewhere, have not hesitated to enjoin state-court proceedings that interfere with Indian Nations' sovereignty.  In *Bowen v. Doyle*, 880 F. Supp. 99 (W.D.N.Y. 1995), the court enjoined the defendant, a New York Supreme Court Justice, from presiding over a state-court action that interfered with the Seneca Nation's internal affairs.  Similarly, in *Aernam v. Nenno*, No. 06-cv-53, 2006 WL 1644691 (W.D.N.Y. June 9, 2006), the court enjoined a New York Supreme Court Justice from presiding over a case because comity required deference to a tribal-court judgment.  More recently, in *Ute Indian Tribe of the Uintah & Ouray Reservation v. Lawrence*, 22 F.4th 892 (10th Cir. 2022), the Tenth Circuit held that the defendant—a Utah state-court judge—should be enjoined from presiding over a dispute over which the tribal court had jurisdiction.  In each of these cases, the federal court recognized that when state courts improperly interfere with an Indian Nation's internal affairs, the Indian Nation is entitled to relief in federal court against the illegal state-court proceeding.  The Cayuga Nation's claims here follow that well-trodden path.  The Nation is the subject of temporary restraining orders ("TROs") that interfere with eviction orders lawfully issued by the Nation's court against tribal members and concerning on-reservation properties. Under well-established federal law, those TROs must be enjoined, and the proceedings in which they were issued must be halted.

3.     The eviction orders at issue relate to two Nation-owned properties located on the Nation's reservation.  Defendants Julius Kettle and Daren Kettle—members of the Nation—currently reside on properties owned by the Nation and leased to them (or others affiliated with them).  Each property is the subject of an unsatisfied money judgment for unpaid rent issued by

the Nation's tribal court. The Nation is also engaged in ongoing proceedings in New York state courts in an effort to domesticate those tribal-court money judgments and render them collectable under state law.

4. Separate and apart from the actions for unpaid rent, the Nation also instituted eviction proceedings in the Nation's tribal court against Julius and Daren.[1] Julius and Daren contested the Nation's right to evict them, but they were unsuccessful in tribal court. At the conclusion of those proceedings, the tribal court issued warrants of eviction authorizing the Nation to evict Julius, Daren, and others residing at the two properties.

5. Julius and Daren did not appeal the eviction orders to the Cayuga Nation Court of Appeals. Instead, at the eleventh hour, Julius and Daren both moved the New York state court overseeing the money-judgment domestication proceedings to issue TROs and preliminary injunctions that would bar the Nation from enforcing its tribal-court eviction orders.

6. Julius and Daren did not articulate any state- or federal-law basis for interference with the Nation's sovereign right to execute its own tribal-court judgments against its own citizens regarding Nation-owned properties on the Nation's treaty-based reservation. Instead, they argued that the New York state court must enjoin the Nation's enforcement of its law on the ground that the Nation's tribal court is illegitimate. Julius's and Daren's requests were directed to Defendant New York Supreme Court Justice Barry L. Porsch, who has previously agreed with the inflammatory proposition that the Nation's judicial system offers no due process and is invalid, and who has previously held—contrary to the uniform position of other courts and the United States government—that the Nation's very claim to its reservation is illegitimate. Justice Porsch

_____

[1] Multiple individuals involved in this case have the surname "Kettle"; for clarity, this complaint often refers to those individuals using their given names.

granted the TROs without providing any reasoning or even giving the Nation an opportunity to be heard.

7.    Justice Porsch's issuance of the TROs is a grave affront to tribal sovereignty that warrants intervention by this Court. State courts have no authority to interfere with an Indian Nation's exercise of sovereign authority under the circumstances presented here—a judgment in tribal court, obtained under procedures set forth under tribal law, involving a quintessentially intertribal dispute between the Nation and one of its own members. Such exercise of jurisdiction "undermine[s] the authority of the tribal courts over Reservation affairs and hence … infringe[s] on the right of [Indian Nations] to govern themselves." *Williams v. Lee*, 358 U.S. 217, 223 (1959). Not only do the state court's TROs illicitly call into question the validity of an tribal-court judgment applying tribal law to a dispute between tribal parties, it goes further and purports to *prohibit* the Nation—a sovereign entity—from enforcing its own judgments.

8.    What is more, the TROs appear to rely on interpretations of the Nation's own law at odds with the definitive interpretations of the Nation's own courts, thereby undermining the Nation's "fundamental and exclusive right to sovereignty over its internal customs, traditions, and processes for selecting its government." *Cayuga Nation v. Campbell*, 140 N.E.3d 479, 491 (N.Y. 2019). Indeed, if the state court were permitted to exercise jurisdiction here and continued to "ignore and even countermand all prior Orders" of the Nation's courts, it would "render[] the Nation's 'power to make [its] own substantive law in internal matters and to enforce that law in [its] own forums' a virtual nullity." *Bowen*, 880 F. Supp. at 137 (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55–56 (1978)). "Such a result would not only destroy the authority of the Nation's judiciary, but would undermine the Nation's very existence as a sovereign entity." *Id.*

9.     Justice Porsch's TROs are utterly lawless, as state courts lack power to resolve the claims asserted by Julius and Daren in the state-court proceedings.  Julius and Daren asked the New York state judicial system to interfere with a landlord-tenant dispute involving the Nation's law, between the Nation and its citizens, arising on the Nation's reservation, and implicating the Nation's core sovereign power to regulate the use of its own land and enforce its courts' judgments on that land.  And even if state courts had any power to resolve these cases under some circumstances, they *never* have authority to install themselves as courts of appeals that may override tribal-court interpretations of tribal law and undermine tribal-court judgments.  As the Supreme Court has explained, "proper deference to the tribal court system precludes relitigation of issues … resolved in the Tribal Courts." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 19 (1987).  But the state court here paid that principle no mind.

10.     The TROs are unlawful for other reasons, too.  For one thing, the Nation enjoys sovereign immunity, and absent an Indian Nation's waiver or Congress's abrogation of that immunity, a state court is entirely without power to direct any relief against an Indian Nation or subject an Indian Nation to ongoing proceedings.  Further, it is well settled that even under the very limited (and inapplicable) circumstances where state or federal courts may interfere with tribal-court proceedings, the party seeking state or federal relief must first exhaust tribal remedies.  Julius and Daren failed to do so here, further underscoring the invalidity of the relief Justice Porsch granted them.  Finally, even if the state court had jurisdiction to enter the relief Julius and Daren seek, considerations of comity demanded that it yield to the jurisdiction of the Nation's own court.

11.     It is difficult to understate the implications of the relief issued by Justice Porsch.  Not only do Justice Porsch's TROs directly tee up a clash between tribal and state sovereignty, they run roughshod over fundamental principles of federal common law that recognize and respect

Indian Nations' sovereign authority—authority that predates the existence of the United States or any State. Federal courts have jurisdiction to declare that States are exceeding the limits of their authority over Indian Nations. *See, e.g.*, *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 329–30 (1983); *Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Lawrence*, 875 F.3d 539, 543 (10th Cir. 2017); *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 464 (2d Cir. 2013). To repair the breach of the Nation's authority and the insult to its sovereignty, this Court should issue declaratory judgments and injunctions to set things right. This Court must declare that the Nation's sacrosanct authority to develop its own law, adjudicate disputes between the Nation and its members arising under that law, and enforce valid judgments obtained in the Nation's court cannot be questioned or undermined by state courts.

## **PARTIES**

12.     Plaintiff is the Cayuga Nation, a federally recognized, sovereign Indian Nation.

13.     Defendant Hon. Barry L. Porsch is an Acting Justice of the Supreme Court of the State of New York, Seneca County. Justice Porsch is currently presiding over *Cayuga Nation v. Leanna Kettle*, No. 20210297, and *Cayuga Nation v. Darren Kettle*, No. 20210286, two cases pending in Seneca County Supreme Court. Justice Porsch is named in his official capacity.

14.     Defendant Julius Kettle is an enrolled member of the Cayuga Nation currently residing on the Nation's reservation in Seneca Falls, New York. Julius's mother, Leanna Kettle, is the respondent in *Cayuga Nation v. Leanna Kettle*, No. 20210297, a case pending in Seneca County Supreme Court. This case arises in part out of a motion Julius has filed in that matter.

15. Defendant Daren Kettle is an enrolled member of the Cayuga Nation currently residing on the Nation's reservation in Seneca Falls, New York. Daren is the respondent in *Cayuga Nation v. Darren Kettle*, No. 20210286,[2] a case pending in Seneca County Supreme Court.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1362 because this action is brought by an Indian Nation and arises under the federal common law of Indian affairs.

17. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because Justice Porsch sits in his official capacity in this district, because Julius Kettle and Daren Kettle reside in this district, and because a substantial part of the events giving rise to the Nation's claims occurred in this district.

## FACTUAL ALLEGATIONS

**I.     The Cayuga Nation and Its Reservation**

18. The Cayuga Nation is a federally recognized, sovereign Indian nation. The United States has recognized the Nation's reservation since the 1794 Treaty of Canandaigua. Today, the Nation's reservation comprises approximately 64,000 acres in Seneca County, New York, and Cayuga County, New York.

19. The Nation's reservation continues to exist and has not been disestablished. Indeed, "every federal court" to consider the question, as well as the New York Court of Appeals, has reached that conclusion. *Cayuga Indian Nation of N.Y. v. Gould*, 930 N.E.2d 233, 247 (N.Y. 2010); *see Cayuga Indian Nation of N.Y. v. Seneca County*, 260 F. Supp. 3d 290, 308–15

---

[2] Daren's name is misspelled as "Darren" in the captions of several underlying cases in tribal and state court.

(W.D.N.Y. 2017) (recounting cases). Likewise, the federal government continues to recognize that the Nation's reservation "has not been diminished or disestablished." Letter from Darryl LaCounte, Dir., Bureau of Indian Affairs, to Stuart Peenstra, Chief of Police, Town of Seneca Falls Police Dep't 1 (June 17, 2019) (attached as Exhibit A).

20.     The Nation possesses inherent sovereignty over its citizens and its reservation. That sovereignty is recognized and given respect by federal law. In particular, the Nation has authority to promulgate and enforce laws governing its territory and those within it. One such law is the Cayuga Nation Real Property Actions & Proceedings Law ("RPAPL").

21.     Pursuant to its sovereign authority, the Nation has established the Cayuga Nation Civil Court to adjudicate disputes arising under tribal law. The Cayuga Nation Civil Court includes both a trial court and a court of appeals. The Nation has also enacted the Cayuga Nation Rules of Civil Procedure to safeguard due-process rights, and the Civil Court's establishing ordinance guarantees an independent judiciary.

22.     Under the RPAPL, the Cayuga Nation Civil Court is authorized to issue monetary judgments and warrants of eviction, in addition to other relief.

## II.     The Nation's Litigation Against Leanna and Julius Kettle

23.     Defendant Julius Kettle is currently occupying Nation-owned premises located at 22 Seneca Road in Seneca Falls, New York, without paying rent. Julius's mother, Leanna Kettle, is the lessee of the property and the signatory on a lease agreement.

### A.     The Tribal-Court Money Judgment and Domestication Proceedings

24.     On January 12, 2021, the Nation instituted proceedings against Leanna in Cayuga Nation Civil Court under the RPAPL, seeking monetary relief for unpaid rent. The case was

presided over by tribal-court judge Joseph E. Fahey. Leanna did not appear or otherwise respond in the tribal-court proceedings.

25. On May 11, 2021, at the conclusion of the proceedings, the Civil Court awarded the Nation $22,902.50, representing unpaid rent, the value of Leanna's and others' continued occupation of the Seneca Road premises, and costs. The same day, the clerk of the Civil Court entered a judgment against Leanna in the same amount. Judgment at 1–2, *Cayuga Nation ex rel. Cayuga Nation Council v. Leanna Kettle*, No. CV-005-21 (Cayuga Nation Civ. Ct. May 11, 2021) ("*Leanna Kettle I*") (attached as Exhibit B). The Civil Court did not award, nor did the Nation seek, any additional relief from or against Leanna.

26. On June 22, 2021, the Nation commenced a special proceeding in the New York State Supreme Court, Seneca County, by filing a notice of petition and a verified petition pursuant to 22 N.Y.C.R.R. § 202.71, which sets forth a process for recognition of tribal-court judgments in New York state courts. Verified Petition, *Cayuga Nation v. Leanna Kettle*, No. 20210297 (N.Y. Sup. Ct. Seneca Cnty. June 22, 2021) ("*Leanna Kettle II*"), NYSCEF No. 1 (attached as Exhibit D). This state-court domestication proceeding was initially assigned to Justice J. Scott Odorisi.

27. Leanna did not timely respond to the petition or otherwise appear in the state-court domestication proceeding. On October 19, 2021, the clerk of the Seneca County Supreme Court entered a judgment against Leanna for $23,262.97, the amount of the tribal-court judgment plus costs and disbursements. Judgment at 1, *Leanna Kettle II*, No. 20210297 (Oct. 19, 2021), NYSCEF No. 19 (attached as Exhibit F). The judgment did not run against any other person.

28. On May 11, 2023, Leanna appeared for the first time in the state-court domestication proceeding. She filed a motion seeking to vacate the default judgment, invoking an April 2023 decision and order, entered in a separate Seneca County Supreme Court proceeding, in

which Justice Porsch had declined to domesticate a Cayuga tribal-court judgment upon taking judicial notice of the fact that the Cayuga Nation has no federally recognized reservation and is not a "sovereign nation with the right to a separate recognized police force and judiciary." Decision & Order at 2, *Cayuga Nation v. Seneca-John*, No. 20220022 (N.Y. Sup. Ct. Seneca Cnty. Apr. 7, 2023), NYSCEF No. 30 (attached as Exhibit K). In his *Seneca-John* opinion, Justice Porsch concluded that "the Cayuga Nation Civil Court has no legal authority to issue rulings against citizens whose property lies solely within Seneca County," and that "the Cayuga Nation's so called police force has no authority to enforce any 'judgments' upon individuals who do not reside in … sovereign national land recognized or held in trust by the United States Government." *Id.* at 3.

29.     On November 29, 2023, Justice Porsch issued a decision and order vacating the default judgment against Leanna, relying on decisions in which Justice Porsch had "previously held that the Cayuga Nation Civil Court has no legal authority to issue rulings against citizens whose property lies solely within Seneca County and that the Cayuga Nation's police force has no authority to enforce any 'judgments' issued by that court." Decision & Order at 2, *Leanna Kettle II*, No. 20210297 (Nov. 29, 2023), NYSCEF No. 63 (attached as Exhibit L).

30.     The Nation timely appealed Justice Porsch's ruling to the New York State Supreme Court, Appellate Division, Fourth Judicial Department. The Fourth Department is scheduled to hear oral argument in the appeal in February 2025.

### B.     The Tribal-Court Eviction Warrant

31.     On January 19, 2024, the Nation filed a petition in Cayuga Nation Civil Court seeking a warrant of eviction for the occupants of the Seneca Road property, as well as additional monetary relief. Verified Petition, *Cayuga Nation ex rel. Cayuga Nation Council v. Julius Kettle*,

No. CV-24-001 (Cayuga Nation Civ. Ct. Jan. 19, 2024) (attached as Exhibit M). The petition was directed at Julius Kettle in particular, as Leanna had already left the premises and turned them over to Julius. Julius appeared in the Civil Court and, on February 25, 2024, filed an answer and counterclaim against the Nation.

32.     On April 3, 2024, Judge Fahey issued a decision and order that granted the Nation's motion to dismiss Julius's affirmative defenses and counterclaim and set the case for further proceedings. Decision & Order at 8, *Julius Kettle*, No. CV-24-001 (Apr. 3, 2024) (attached as Exhibit P).[3]

33.     In advance of a May 3, 2024 hearing, the Nation moved the Civil Court to enter judgment in its favor based on the undisputed facts. At the hearing, Judge Fahey directed Julius to file any opposition to the Nation's motion by May 8, 2024.

34.     Julius did not file any opposition, and on May 15, 2024, the Civil Court issued a warrant of eviction directed at Julius and other occupants of the Seneca Road property. Warrant of Eviction, *Julius Kettle*, No. CV-24-001 (May 15, 2024) (attached as Exhibit R). Julius did not appeal the eviction order to the Cayuga Nation Court of Appeals.

35.     The Cayuga Nation Police issued an eviction notice on August 13, 2024, and it was served on Julius on August 15, 2024. The notice indicated that Julius had until August 29, 2024, to vacate the Seneca Road property.

36.     The Nation has not sought to domesticate the Seneca Road eviction order or otherwise enlist New York state law-enforcement personnel to execute the tribal-court order in the Seneca Road eviction matter.

---

[3] The April 3, 2024 decision is directed at Daren Kettle, but as the Civil Court later clarified, the ruling also applied to Julius's case, which was heard together with Daren's. *See* Decision & Order at 2 n.1, *Julius Kettle*, No. CV-24-001 (May 14, 2024) (attached as Exhibit Q).

### III. The Nation's Litigation Against Daren Kettle

37.     Defendant Daren Kettle is currently occupying Nation-owned premises located at 3016 East Bayard Street in Seneca Falls, New York, without paying rent.  Daren is the lessee of the property and the signatory on a lease agreement.

#### A.     The Tribal-Court Money Judgment and Domestication Proceedings

38.     On January 12, 2021, the Nation instituted proceedings against Daren in Cayuga Nation Civil Court under the RPAPL, seeking monetary relief for unpaid rent.  The case was presided over by tribal court judge Joseph E. Fahey.  Daren did not appear or otherwise respond in the tribal-court proceedings.

39.     On May 11, 2021, at the conclusion of the proceedings, the Civil Court awarded the Nation $23,503.50, representing unpaid rent, the value of Daren's and others' continued occupation of the East Bayard Street premises, and costs.  The same day, the clerk of the Civil Court entered a judgment against Daren in the same amount.  Judgment at 1, *Cayuga Nation ex rel. Cayuga Nation Council v. Darren Kettle*, No. CV-003-21 (Cayuga Nation Civ. Ct. May 11, 2021) ("*Daren Kettle I*") (attached as Exhibit C).  The Civil Court did not award, nor did the Nation seek, any additional relief from or against Daren.

40.     On June 22, 2021, the Nation commenced a state-court domestication proceeding in the New York State Supreme Court, Seneca County, by filing a notice of petition and a verified petition pursuant to 22 N.Y.C.R.R. § 202.71, which sets forth a process for recognition of tribal-court judgments in New York state courts.  Verified Petition, *Cayuga Nation v. Darren Kettle*, No. 20210286 (N.Y. Sup. Ct. Seneca Cnty. June 22, 2021) ("*Daren Kettle II*"), NYSCEF No. 1 (attached as Exhibit E).  This state-court domestication proceeding was initially assigned to Justice J. Scott Odorisi.

41.     Daren did not timely respond to the petition or otherwise appear in the state-court domestication proceeding.  On October 19, 2021, the clerk of the Seneca County Supreme Court entered a judgment against Daren for $23,869.97, the amount of the tribal-court judgment plus costs and disbursements.  Judgment at 1, *Daren Kettle II*, No. 20210286 (Oct. 19, 2021), NYSCEF No. 18 (attached as Exhibit G).

42.     On September 12, 2022, Daren appeared for the first time in the state-court domestication proceeding.  He filed a motion seeking to vacate the default judgment, arguing that the Cayuga Nation Civil Court judgment was invalid because Judge Fahey was not qualified to serve as a judge under tribal law.  Daren also invoked a July 2022 decision from Justice Porsch in a different case.  In that case, Justice Porsch had denied a petition by the Nation to domesticate a tribal-court judgment under Section 202.71 upon concluding that the Nation had failed to adequately prove that the Cayuga Nation Civil Court was properly established under tribal law. Decision & Order at 1–2, *Cayuga Nation v. Cayuga Lake Trading Store, LLC*, No. 20220007 (N.Y. Sup. Ct. Seneca Cnty. July 19, 2022), NYSCEF No. 10 (attached as Exhibit H).

43.     In opposing Daren's motion, the Nation argued, *inter alia*, that New York state courts lack jurisdiction to make determinations as to intertribal matters, such as the validity of the appointment of a tribal judge under tribal constitutional law.

44.     On October 3, 2022, the Seneca County Supreme Court stayed further proceedings in Daren's domestication case pending resolution of the appeal from Justice Porsch's decision in the *Cayuga Lake Trading Store* case.  Court Notice, *Daren Kettle II*, No. 20210286 (Oct. 3, 2022), NYSCEF No. 45 (attached as Exhibit J).

45.     On May 18, 2023, Daren filed a further motion to vacate the default judgment, invoking Justice Porsch's decision in the *Seneca-John* case.  Proceedings in Daren's domestication case remain stayed.

**B.     The Tribal-Court Eviction Warrant**

46.     On January 19, 2024, the Nation filed a petition in Cayuga Nation Civil Court seeking a warrant of eviction for the occupants of the East Bayard Street property as well as additional monetary relief.  Verified Petition, *Cayuga Nation ex rel. Cayuga Nation Council v. Darren Kettle*, No. CV-24-002 (Cayuga Nation Civ. Ct. Jan. 19, 2024) ("*Daren Kettle III*") (attached as Exhibit N).  Daren failed to timely appear or otherwise respond to the tribal-court eviction proceeding, over which Judge Fahey was presiding, and the Civil Court entered a default judgment on February 21, 2024.  Order & Judgment, *Daren Kettle III*, No. CV-24-002 (Feb. 21, 2024) (attached as Exhibit O).

47.     On February 24, 2024, Daren appeared in the Civil Court and filed an answer and counterclaim against the Nation.  Two days later, Daren filed a motion to vacate the February 21 default judgment, arguing that it did not comply with the timing requirements for service and response under the RPAPL.

48.     Judge Fahey heard oral argument on Daren's motion to vacate.  On April 3, 2024, Judge Fahey issued a decision and order that (1) granted Daren's motion to vacate the default judgment; (2) accepted Daren's answer; (3) granted the Nation's motion to dismiss Daren's affirmative defenses and counterclaim; and (4) restored the case to the Civil Court's calendar for further proceedings.  Decision & Order at 8, *Daren Kettle III*, No. CV-24-002 (Apr. 3, 2024) (attached as Exhibit P).

49.     In advance of a May 3, 2024 hearing, the Nation moved the Civil Court to enter judgment in its favor based on the undisputed facts.  At the hearing, Judge Fahey directed Daren to file any opposition to the Nation's motion by May 8, 2024.

50.     Daren did not file any opposition, and on May 15, 2024, the Civil Court issued a warrant of eviction directed at Daren the occupants of the East Bayard Street property.  Warrant of Eviction, *Daren Kettle III*, No. CV-24-002 (May 15, 2024) (attached as Exhibit S).

51.     Daren did not appeal the eviction order to the Cayuga Nation Court of Appeals.

52.     The Cayuga Nation Police issued an eviction notice on August 13, 2024, and it was served on Daren on August 14, 2024.  The notice indicated that Daren had until August 28, 2024, to vacate the East Bayard Street property.

53.     The Nation has not sought to domesticate the East Bayard Street eviction order or otherwise enlist New York state law-enforcement personnel to execute the tribal-court judgment in the East Bayard Street eviction matter.

## IV.     The Motions for Preliminary Injunctions and Temporary Restraining Orders

54.     On August 26, 2024, both Julius and Daren filed motions for TROs and preliminary injunctions in the respective state-court domestication proceedings.

55.     Julius filed his motion despite not being a party in the state-court domestication proceeding against Leanna.  Julius did not move to intervene and did not formally assert any claim against the Nation.

56.     Julius claimed in his motion that he had a likelihood of success on the merits (of his as-yet unasserted claim against the Nation) because he "ha[d] already 'won' on this underlying matter," as evidenced by Justice Porsch's vacatur of the default judgment in the domestication proceeding against Leanna, which, Julius argued, proved that the Cayuga Nation Court "is unable

to follow its own rules and laws and offers no modicum of due process." Respondent's Memorandum of Law in Support of Order to Show Cause Requesting a Temporary Restraining Order & Preliminary Injunction at 16, *Leanna Kettle II*, No. 20210297 (Aug. 26, 2024), NYSCEF No. 69 (attached as Exhibit T).

57. Julius requested a TRO pending a hearing on his motion for a preliminary injunction.

58. Daren likewise filed his motion without formally asserting a claim against the Nation. Daren repeated Julius's accusation that the tribal-court eviction order was "invalid" because "that court is unable to follow its own rules and laws and offers no modicum of due process." Respondent's Memorandum of Law in Support of Order to Show Cause Requesting a Temporary Restraining Order & Preliminary Injunction at 15, *Daren Kettle II*, No. 20210286 (Aug. 26, 2024), NYSCEF No. 74 (attached as Exhibit V). The flaws in the Nation's court system related specifically to Judge Fahey: Daren claimed that Judge Fahey was not qualified to sit as a tribal-court judge under the Nation's constitution; that Judge Fahey's employment contract authorized him to preside only over criminal cases; and that Judge Fahey's at-will employment status rendered him insufficiently impartial.

59. The Cayuga Nation Court of Appeals has rejected arguments relating to Judge Fahey's appointment in previous cases. *See* Memorandum & Order in Consolidated Cases at 4, *Cayuga Nation ex rel. Cayuga Nat'l Council v. Jimerson*, No. CV-008-21 etc. (Cayuga Nation Ct. App. Sept. 29, 2022) (attached as Exhibit I).

60. Daren requested a TRO pending a hearing on his motion for a preliminary injunction.

61.    Mere hours after the TRO filings, and without affording the Nation any opportunity to be heard, Justice Porsch signed Julius's and Daren's respective proposed orders, issuing TROs enjoining the Nation from taking any action to execute the warrants of eviction relating to the Seneca Road and East Bayard Street properties.  Order to Show Cause Seeking a Temporary Restraining Order & Preliminary Injunction, *Leanna Kettle II*, No. 20210297 (Aug. 26, 2024), NYSCEF No. 86 (attached as Exhibit U); Order to Show Cause Seeking a Temporary Restraining Order & Preliminary Injunction, *Daren Kettle III*, No. 20210286 (Aug. 26, 2024), NYSCEF No. 92 (attached as Exhibit W).  Justice Porsch provided no reasoning in either TRO order.

### COUNT 1
#### Federal Common Law—Unlawful Interference
#### with Sovereign Authority of Indian Nation and Tribal Affairs
#### (Against All Defendants)

62.    Paragraphs 1 through 61 of this complaint are repeated and realleged as if fully set forth herein.

63.    The federal common law of Indian affairs allocates jurisdiction among the federal government, the States, and Indian Nations.  By issuing TROs against the Nation in the *Daren Kettle II* and *Leanna Kettle II* matters, Justice Porsch violated the boundary that federal law erects between States and Indian Nations.  In doing so, Justice Porsch inflicted a grave injury against the Nation and its sovereign authority.  In fact, federal law precludes Justice Porsch, or any officer of the New York state judicial system, from maintaining proceedings to adjudicate the motions filed in the *Leanna Kettle II* and *Darren Kettle II* matters for relief from Cayuga Nation Civil Court's eviction orders.

64.    Those motions are effectively counterclaims against the Nation, even though they have not been so denominated by Julius and Daren.  The motions seek relief unrelated to and far broader than what the Nation has sought in the domestication proceedings.  Indeed, in *Leanna*

*Kettle II*, the state court has already entered judgment against the Nation with respect to all the relief it sought, yet Julius has asked for further restraint of the Nation.

65. Justice Porsch's issuance of TROs and continuing maintenance of the effective counterclaims asserted by Julius Kettle and Daren Kettle is unlawful for several reasons. And for those same reasons, Julius Kettle and Daren Kettle have violated the Nation's rights as well.

66. First, Justice Porsch's TROs are unlawful because state courts lack power to adjudicate the claims Julius and Daren assert in the state-court domestication proceedings. The State of New York lacks the legislative authority to regulate landlord-tenant relationships on tribal land involving tribal members, and it lacks the adjudicative authority to resolve disputes between the Nation and its citizens. Julius's and Daren's motions effectively ask the state court to adjudicate claims asserted by the Nation, against tribal members, for activity on the Nation's reservation, and relating to subject-matter (landlord-tenant law) in the heartland of the Nation's sovereign authority.

67. Second, the *basis* for the TROs reflects a grave and unlawful intrusion into the Nation's sovereignty. Daren's TRO motion raised exclusively tribal-law challenges to the validity of the tribal-court eviction order. State courts lack power to adjudicate issues of tribal law—especially where, as here, the tribal courts have already spoken conclusively to the precise issue. The Cayuga Nation Court of Appeals has already considered and rejected arguments similar to those raised by Daren, and state courts lack power to reconsider those issues.

68. For his part, Julius argues that he has already won in state court as a matter of state law, but that is plainly wrong. True, Leanna (not Julius) obtained a ruling that the tribal-court money judgment against Leanna could not be domesticated as a matter of *state* law. That issue has no bearing on the validity under *tribal* law of the entirely separate eviction order against Julius.

That Justice Porsch relied on the unrelated ruling to enjoin enforcement of a tribal judgment is a more serious intrusion still into tribal sovereignty.

69.     Third, not only did Justice Porsch unlawfully exercise authority over the Nation and unlawfully decide issues of tribal law, his TROs effectively overturn judgments of the tribal court.  Tribal citizens may not collaterally attack tribal-court judgments in state court.  And state-court judges may not prohibit other sovereign authorities from enforcing their own judgments against their own citizens in their own territories.

70.     Fourth, the Nation enjoys sovereign immunity that shields it from judicial process—and in particular from the power of state courts to declare its tribal-court rulings void or to enjoin the execution of judgments entered in its tribal courts.  Sovereign immunity also precludes the assertion of the de facto counterclaims brought by Julius and Daren.  Justice Porsch's TROs are therefore unlawful exercises of state power as a matter of federal law.

71.     Fifth, even if state courts had any of the authority claimed by Justice Porsch, Julius and Daren were required to exhaust their tribal-court remedies before seeking review in state court.  As a matter of federal law, no court can interfere with tribal proceedings unless the challenger has exhausted available tribal-court remedies.  Here, rather than challenge the eviction orders in the Cayuga Nation Court of Appeals, Julius and Daren went directly to state court.  At a minimum, state courts lack power to enjoin enforcement of tribal-court judgments before exhaustion of tribal remedies.

72.     Finally, considerations of comity require that even when state courts have concurrent jurisdiction over tribal matters, they must cede that jurisdiction in light of tribal-court proceedings addressing the same issues.  Here, every relevant factor to this comity analysis supports dismissal: *inter alia*, the eviction actions originated and have been fully adjudicated in

the Nation's court; the actions relate to property on the Nation's reservation and to disputes between the Nation and its citizens; the actions arise under the Nation's law; and the Nation's interest in the proceedings dwarfs any conceivable interest of the State of New York. Justice Porsch was thus obligated to reject Julius's and Daren's challenges to the tribal-court eviction orders and deny preliminary relief, even on the erroneous assumption that the New York state court had jurisdiction at all.

73. Justice Porsch's TROs cannot possibly be justified on the ground that they are necessary to protect the Seneca County Supreme Court's jurisdiction, or otherwise preserve the status quo, in the state-court domestication proceedings. The only question at issue in those proceedings is whether the tribal-court money judgments against Leanna and Daren are to be recognized as valid money judgments under New York state law. Whether Julius and Daren are evicted from the Nation's properties on which they are unlawfully residing has no bearing on the domestication proceedings, and nothing in the domestication proceedings calls into question the Nation's right to execute the warrants of eviction.

74. Accordingly, the Nation is entitled to a declaratory judgment that Justice Porsch has violated the federal common law of Indian affairs by issuing the TROs and by continuing to exercise authority over the claims asserted by Julius and Daren. Likewise, the Nation is entitled to a declaratory judgment that Julius and Daren have acted unlawfully in seeking to invoke the New York judicial system to undermine the Nation's sovereign authority. The Nation is entitled to injunctions, too, that direct Justice Porsch to vacate the TROs and deny the pending motions for preliminary injunctions, and that direct Julius and Daren to cease their efforts to use state power to illicitly interfere with the Nation's judgments.

## PRAYER FOR RELIEF

75.     WHEREFORE, Plaintiff Cayuga Nation respectfully requests that this Court enter judgment in its favor against all Defendants and grant the following relief:

A.      A declaration that the New York state courts lack the power to adjudicate any claims for relief asserted by Julius Kettle and Daren Kettle attacking the validity of the warrants of eviction issued against them by the Cayuga Nation Civil Court or seeking to enjoin or otherwise interfere with the Nation's execution of those warrants;

B.      A declaration that Julius Kettle and Daren Kettle may not challenge the validity of, seek to enjoin the enforcement of, or otherwise collaterally attack these warrants of eviction in the New York state courts;

C.      A permanent injunction requiring Defendant Justice Porsch to immediately dissolve all temporary restraining orders, preliminary injunctions, and/or permanent injunctions, and to vacate any and all relief entered against the Nation in *Cayuga Nation v. Leanna Kettle*, No. 20210297 (N.Y. Sup. Ct. Seneca Cnty.), and *Cayuga Nation v. Darren Kettle*, No. 20210286 (N.Y. Sup. Ct. Seneca Cnty.), and to abstain from entering similar relief in these or other related matters;

D.      A permanent injunction requiring Julius Kettle to cease his efforts to enlist the New York state judicial system to collaterally attack the validity of, or interfere with the enforcement of, the warrant of eviction relating to the Seneca Road property;

E.      A permanent injunction requiring Daren Kettle to cease his efforts to enlist the New York state judicial system to collaterally attack the validity of, or interfere with the enforcement of, the warrant of eviction relating to the East Bayard Street property;

F.  All costs and fees available under law; and

G.  Such other relief that this Court deems just and proper under the circumstances.

Dated:  September 5, 2024                    Respectfully submitted,

                                             /s/ Jacob D. Alderdice
                                             Jacob D. Alderdice (N.Y. Bar No. 5349147)
                                             JENNER & BLOCK LLP
                                             1155 Avenue of the Americas
                                             New York, NY 10036
                                             (212) 891-1600
                                             jalderdice@jenner.com

                                             David W. DeBruin**
                                             JENNER & BLOCK LLP
                                             1099 New York Avenue, NW, Suite 900
                                             Washington, DC 20001
                                             (202) 639-6000
                                             ddebruin@jenner.com

                                             *Attorneys for Plaintiff Cayuga Nation*

                                             ** *pro hac vice* application forthcoming